UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

In Re: Steven Earl Riddick                              Case No. 15-50511-SCS
     Debtor(s)                                      Chapter 13

## NOTICE OF MOTION TO MODIFY LOAN

Steven Earl Riddick, the Debtor, by counsel, John E. Bedi, has filed papers with the Court; your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).

Under Local Bankruptcy Rule 9013-1, unless a written response to this motion and supporting memorandum are filed with the Clerk of Court and served on the moving party **within 21 days** objecting to the relief requested, the Court may deem any opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.

If you do not want the Court to grant this request or if you want the Court to consider your views on the Motion, then you or your attorney must file with the Court your response and objection and request a hearing to the address listed below:

U.S. Bankruptcy Court
Norfolk Division
600 Granby Street
Norfolk, VA 23510

If you mail your request to the court for filing, you must also mail a copy to:

John E. Bedi, Esquire
Lake Center I
501 Independence Pkwy., Ste. 102
Chesapeake, VA 23320

_/s/ John E. Bedi_____
John E. Bedi, Esq.

Date: 12/15/15

John E. Bedi, Esquire
Lake Center I
501 Independence Pkwy., Ste. 102,
Chesapeake, VA 23320
(757) 497-9075
Va. State Bar No. 28718

## *CERTIFICATION OF SERVICE*

I do hereby certify that on December 15, 2015, I sent a true copy of the foregoing Motion either by electronic mail and/or first-class mail, to the Debtor, Caliber Home Loans, Inc., 13801 Wireless Way, Oklahoma City, OK, 73134, Caliber Home Loans Inc., c/o Joe Anderson, CEO, 13801 Wireless Way, Oklahoma City, OK 73134, the Ch. 13 Trustee, to the Office of the U.S. Trustee, and to all creditors and parties of interest (matrix attached),


/s/ John E. Bedi
John E. Bedi, Esq.

John E. Bedi, Esquire
Lake Center I
501 Independence Pkwy., Ste. 102,
Chesapeake, VA 23320
(757) 497-9075
Va. State Bar No. 28718

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

In Re: Steven Earl Riddick            Case No. 15-50511-SCS
       Debtor(s)                      Chapter 13

## MOTION TO MODIFY LOAN

COME NOW, the Debtor, Steven Earl Riddick, by counsel, and moves this honorable

Court for authority to modify loan, and in support thereof states as follows:

1.  That the Debtor filed his Chapter 13 Bankruptcy proceeding in this Court on April 18, 2015.

2.  That the Debtor filed his original Chapter 13 Plan on or about May 1, 2015.

3.  That the plan has not yet been confirmed.

4.  That the Debtor desires to modify his current indebtedness by qualifying for a loan modification, the terms of which are as follows:

    a.  A loan modification from Caliber Home Loans, Inc., in the amount of $345,870.54, which is the new anticipated principle balance and the interest rate of 4.0% which will remain in effect until the maturity date of the loan (See Attached Exhibit A).

    b.  That the approximate current principal balance as stated on the proof of claim is $364,413.88. (See Attached Exhibit B).

    c.  The present interest rate is 4.0%. The new interest rate will be 4.0%.

    d.  The monthly payments will be $1,643.56 (current payment is $1,736.48) beginning November 1, 2015 and will continue on the same day of each month until the loan maturity date.

John E. Bedi, Esquire
Lake Center I
501 Independence Pkwy., Ste. 102,
Chesapeake, VA 23320
(757) 497-9075
Va. State Bar No. 28718

e.   That the monthly payments of $1,643.56 include taxes and insurance.

f.   That the principal and interest monthly payment is $1,152.90.

g.   That the Debtor signed the proposed loan modification on October 19, 2015.

h.   That the law firm representing Caliber Home Loans Inc. provided the proposed loan modification to debtor's counsel on December 3, 2015, but has advised counsel that Caliber Home Loans Inc. will not sign it until the modification until after this court approves the proposed loan modification.

i.   That the proposed loan modification will only go into effect upon entry of an Order by this Court approving the modification.

5.   That the proposed modification would result in a change in the Debtor' monthly mortgage payment. If the modification is approved by the Court, the Debtor will file the appropriate amendments to reflect his true disposable income in order to commit all disposable income to his Chapter 13 Plan.

6.   That the amount of the arrearage owed to Caliber Home Loans Inc. according to their proof of claim is $21,324.73.

7.   That if the modification is approved by the Court, Caliber Home Loans, Inc., will submit an amended proof of claim reflecting zero (0) arrears.

8.   This modification is for the purpose of modifying an existing mortgage in order to resolve the Debtor' past due amounts and bring the account into a current status, while also lowering the Debtor' monthly mortgage payment and interest rate.

9.   The legal description of the subject property located at 205 Harbour Drive, Hampton, VA , is as follows:

John E. Bedi, Esquire
Lake Center I
501 Independence Pkwy., Ste. 102,
Chesapeake, VA 23320
(757) 497-9075
Va. State Bar No. 28718

**PARCEL I:**

All that certain lot, piece or parcel of land situate, lying and being in the City of Hampton, Virginia, known and designated as Lot Numbered TEN (10), in Block "B", as shown in that certain plat entitled, "INDIAN RIVER PARK PROPERTY OF BOULEVARD DEVELOPMENT CORPORATION," made by P. P. Phillips, C.E., dated June 19, 1916 and duly recorded in the Clerk's Office of the Circuit Court for the City of Hampton, Virginia, in Deed Book 59, page 478 et. seq. to which reference is here made.

**PARCEL II:**

All that certain lot, piece or parcel of land situate, lying and being in the City of Hampton, Virginia, known and designated as Lot Numbered B 10A, as shown on that certain plat entitled, "MAP OF INDIAN RIVER AND HARBOR DRIVE, TRACED FROM MAP BY R. F. PYLE FOR PROPOSED DREDGING OF INDIAN RIVER," dated May 8, 1951, and duly recorded in the Clerk's Office of the Circuit Court of the City of Hampton, Virginia, in Miscellaneous Plat Book 1, page 65, to which reference is here made.

10. That, if, subsequent to the entry of this order approving the proposed loan modification, the secured creditor who is agreeing to the loan modification, or its agent or servicer files an amended proof of claim in an amount less than the amount already paid by the Trustee pursuant to a prior allowed proof of claim filed in a higher amount by or on behalf of said secured creditor, the secured creditor, or its successor in interest shall refund to the Trustee the overpayment caused by the lower amended proof of claim.  The refund shall be paid to the Trustee within 21 days of the entry of this order or the filing of the lower amended claim, whichever occurs later.  Debtor and Debtor' counsel shall be responsible for informing the appropriate parties of this obligation and for obtaining the refund for the estate.

11. The Debtor believe that modifying his loan is necessary and proper, that the Debtor are able to repay that loan upon the terms set forth above, that the Debtor will be able to continue in his Plan without default, and that the purpose for modifying his loan is so that the Debtor will be able to modify the terms of his current Mortgage.

John E. Bedi, Esquire
Lake Center I
501 Independence Pkwy., Ste. 102,
Chesapeake, VA 23320
(757) 497-9075
Va. State Bar No. 28718

WHEREFORE, the Debtor respectfully request that his Motion to Modify Loan be

granted as requested and for the purpose described above.


Respectfully Submitted,

Steven Earl Riddick

By: /s/ John E. Bedi
John E. Bedi, Esq.
Of Counsel


## *CERTIFICATION OF SERVICE*

I do hereby certify that on December 15, 2015, I sent a true copy of the foregoing Motion either by electronic mail and/or first-class mail, to the Debtor, Caliber Home Loans, Inc., 13801 Wireless Way, Oklahoma City, OK, 73134, Caliber Home Loans Inc., c/o Joe Anderson, CEO, 13801 Wireless Way, Oklahoma City, OK 73134, the Ch. 13 Trustee, to the Office of the U.S. Trustee, and to all creditors and parties of interest (matrix attached),


/s/ John E. Bedi
John E. Bedi, Esq.


John E. Bedi, Esquire
Lake Center I
501 Independence Pkwy., Ste. 102,
Chesapeake, VA 23320
(757) 497-9075
Va. State Bar No. 28718

Label Matrix for local noticing
0422-4
Case 15-50511-SCS
Eastern District of Virginia
Newport News
Tue Dec 15 13:53:13 EST 2015

United States Bankruptcy Court
2400 West Avenue, Suite 110
Newport News, VA 23607-4328

Caliber Home Loans
P.O. Box 24610
Oklahoma City, OK 73124-0610

Capital One Bank, USA
c/o Richard D Fairbank, CEO
4851 Cox Road
Glen Allen, VA 23060-6293

Cavalry SPV I, LLC
500 Summit Lake Drive, Ste 400
Valhalla, NY 10595-1340

City of Hampton
Treasurer Office
1 Franklin Street, Suite 100
Hampton VA 23669-3575

Fast Auto Loans Inc
3500 Mount Vernon Ave.
Alexandria, VA 22305-2401

Fast Auto Loans, Inc.
C/O Legal Department
8601 Dunwoody Place, Suite 406
Atlanta, GA 30350-2550

GCAAR
6 Montgomery Ave. #235
Gaithersburg, MD 20877-2708

Sprint Headquaters
6200 Sprint Parkway
Overland Park, KS 66251-6117

U.S. Attorney's Office
Suite 8000
101 West Main Street
Norfolk VA 23510-1651

U.S. Bank Trust, N.A.
Caliber Home Loans, Inc.
13801 Wireless Way
Oklahoma City, OK 73134-2500

U.S. Department of Justice
New York - Southern
86 Chambers St. 3rd. Floor
New York, NY 10007-2632

John Edwin Bedi
Lake Center I
501 Independence Pkwy., Ste. 102
Chesapeake, VA 23320-5173

R. Clinton Stackhouse Jr.
Chapter 12/13 Trustee
7021 Harbour View Boulevard
Suite 101
Suffolk, VA 23435-2869

Steven Earl Riddick
P.O. Box 1205
Hampton, VA 23661-0205

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)U.S. Bank Trust, N.A.

End of Label Matrix
Mailable recipients    15
Bypassed recipients     1
Total                  16

EXHIBIT A

[Space Reserved for Recording Information]

## MODIFICATION AGREEMENT – LIMITED TERM INTEREST ONLY

**To the Borrower: This Agreement contains changes in terms which affect your Loan secured by the Property identified below. This is a legal obligation and you should read and understand the terms of this Agreement before you sign it.**

**This Agreement (the "Agreement") is dated as of 9/15/2015 but effective as of the Modification Effective Date defined herein, by and between STEVEN RIDDICK (collectively, the "Borrower") and Caliber Home Loans, Inc., on behalf of the current investor (the "Servicer").**

RECITALS:

A.   Borrower has a mortgage loan, account number _____ (the "Loan"). This loan is secured by property commonly referred to as 205 HARBOR DRIVE, HAMPTON, VA 23661 (the "Property"). The legal description to the Property may be attached to this Agreement by the Servicer if required.

B.   Borrower signed the following documents in connection with the Loan:

- Note dated 4/18/2006 in the original amount of $356,000.00 (the "Note").

- Mortgage or Deed of Trust on the Property, recorded in real property records of HAMPTON County, VA (the "Mortgage").

- The Note and the Mortgage, together with all documents signed at the same time as the Note and Mortgage are called the "Loan Documents".

C.   The following amounts are outstanding under the terms of the Note:

| | |
|---|---|
| Unpaid Principal: | $345,870.54 |
| Unpaid Interest: | $15,487.29 |
| Other Unpaid Amounts: | $126,439.00 |
| Total: | $487,796.83 |

Included in the Other Unpaid Amounts is $0.00, the amount that Servicer has advanced for real property taxes, insurance, water liens, or other amounts that may have become due with respect to the Property. This is known as the "Ancillary Amount".

D.   Borrower is in default for failure to make payments or has demonstrated imminent default under the terms of the Note. Servicer has the right or may have the right to seek remedies for default pursuant to the terms of the Mortgage in order to recover amounts that remain outstanding under the terms of the Note.

E.   Borrower has provided information to Servicer, and Borrower and Servicer want to modify the terms of the Note and Mortgage.

Borrower and Servicer (collectively, the "Parties"), agree as follows:

1.   **Borrower's Representations.** Borrower certifies that each of these statements is true:

A.   Borrower is experiencing a financial hardship and is either in default for failure to make payments on the Note or will shortly be in default. Borrower does not have sufficient income or access to sufficient liquid assets to make regular payments on the Note.

B.   The Property has not been condemned or is not subject to condemnation proceedings.

C.   There has been no change in the ownership of the Property since the time the Loan Documents were signed.

D.   Borrower has given Servicer information, all of which is true and accurate, regarding Borrower's income and/or liquid assets (with the exception of any information regarding Alimony and Child Support payments, unless the Borrower wants the Servicer to consider that to be income).

E.   All documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct.

F.   Borrower will obtain credit counseling within 30 days of this agreement if the Servicer requires it. Borrower will provide proof of credit counseling if required by Servicer.

2.   **Conditions to Effectiveness of Agreement.** This Agreement will only be effective after each of these events happen:

A.   Borrower must sign and return a signed original of this Agreement to Servicer on or before ___9/30/15___.

B.   Servicer, when it receives this Agreement, will verify the accuracy of Borrower representations.

C.   If the Servicer (in its sole discretion) determines that Borrower's representations are accurate, then Servicer will execute this Agreement and it will become effective as of (the "Modification Effective Date"). If the Servicer determines that the Borrower's representations are not accurate, then the Servicer will notify the Borrower and this Agreement will not become effective.

3.   **Modification of the Loan Documents.** If all the conditions outlined above are met, then your Loan is modified as follows:

Summary of Modification: We may reduce the balance on which interest is accruing and we may lower the interest rate for a period of time called the Reduction Period. During the Reduction Period you will make monthly "interest only" payments (plus escrow and Ancillary payments). Certain amounts are deferred, meaning that the amounts remain outstanding under the terms of the Note, but they will be collected by the Servicer at a later date. On the Reduction Period End Date, your Loan and interest rate will revert to the terms of the operative loan documents and your payment may increase. Deferred Amounts will remain deferred.

| | |
|---|---|
| New Principal Balance: | $345,870.54 |
| Modification Interest Rate: | 4.000% |
| Modification Interest Only Payment: | $1,152.90 |
| Monthly Escrow Payment: | $490.66 |
| Ancillary Monthly Payment: | $0.00 |
| Total New Monthly Payment: | $1,643.56 |
| | |
| Reduction Period End Date: | 10/1/2020 |
| Deferred Amount: | $141,926.29 |
| | |
| New Maturity Date (if applicable): | |
| Modification Effective Date: | 10/1/2015 |
| First Modification Payment Date: | 11/1/2015 |

These Definitions apply to the categories above:

**New Principal Balance:** This is the principal balance Servicer has agreed to use for this modification and is used to calculate your payment. If you successfully complete this modification, this is the principal balance upon which interest will continue to accrue.

**Modification Interest Rate:** This is the interest rate that will be in effect under this Agreement. This rate is "fixed" and will not change until the Reduction Period End Date.

**Modification Interest Only Payment:** This is the new monthly payment and represents interest due and payable monthly on the New Principal Balance. You are not required to make a payment toward the reduction of principal until the Reduction Period End Date. Because the interest rate is "fixed" and will not change until the Reduction Period End Date, this amount will not change unless you make payments to be applied toward Principal.

**Monthly Escrow Payment:** This is your monthly payment into an escrow account and this amount is calculated in accordance with the Loan Documents and State and Federal law. This amount may change from time to time if escrow items (primarily taxes and insurance) increase or decrease.

**Ancillary Monthly Payment**: This includes some or all amounts that Servicer has advanced for real property taxes, insurance, water liens, or other amounts that may have become due with respect to the Property. Servicer has spread the repayment of Ancillary Amounts over a period of _O_ months.

**Total New Monthly Payment**: This is the sum of the Modification Interest Only Payment, Monthly Escrow Payment and Ancillary Monthly Payment.

**Reduction Period End Date**: This is the date on which the Modification Interest Rate will revert to the interest rate provided for in the operative loan documents.

**New Maturity Date**: This is the date on which the Note matures.

**Modification Effective Date**: This is the date that interest begins to accrue at the rate set forth in this Agreement.

**First Modification Payment Date**: This is the date on which your first modified payment is due.

**PLEASE NOTE: On the Reduction Period End Date, this Agreement will terminate and the interest rate of your Loan will revert to those in your Loan Documents. This means that your payment may increase because it will include principal and will be calculated using the interest rate provided for in the operative loan documents.**

**Deferred Amount**: The Deferred Amount consists of amounts that are outstanding under the terms of the Note and Loan Documents, but which Servicer has agreed to not collect until payment in full of the debt or the New Maturity Date, whichever happens first. The Deferred Amount may consist of some principal, and can consist of interest outstanding but not paid, outstanding Servicer fees or charges, and advances made by the Servicer.

**PLEASE NOTE: The Deferred Amounts will be collected by the Servicer at the earlier of payment in full of the Note or the New Maturity Date. If the Borrower sells the Property or refinances the Loan, the Borrower will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts will remain outstanding on the New Maturity Date and are required to be paid at that time. This means that if the Borrower makes all the payments required by this Agreement the Deferred Amount will still be owed to Servicer.**

4.  **Events of Default.** Borrower will be in default and Servicer may terminate this Agreement, if:

    A.   Borrower fails to make any payments required by this Agreement within 15 days of any due date for a payment, _or_

    B.   Borrower fails to comply with any other terms or conditions created by this Agreement or the Loan Documents.

5.  **Additional Agreements.** The Parties further agree to and acknowledge each of the following:

    A.   All persons who signed the Loan Documents must sign this document in person or by an authorized representative (unless an original signor is deceased). Borrower, by signing this Agreement, will be presumed to have read this Agreement and understand the terms of this Agreement.

    B.   This Agreement takes the place of any other agreement that Borrower may have or have had in the past with Servicer including any prior modification or forbearance agreements.

    C.   This Agreement constitutes notice that any waiver by the Lender, Noteholder or Servicer as to payment of taxes, insurance and other escrow items has been revoked. Where allowed under the Loan Documents, this Agreement established an escrow account for the Loan and Borrower will make monthly payments to an escrow account established by Servicer. These payments will be calculated as required by the Loan Documents. Servicer will not pay Borrower interest on the escrow deposit unless required by State or Federal law.

D.     The Loan Documents are properly and duly executed by all parties who were required to execute them and are a valid, binding obligation of the parties to those documents, and each Loan Document is enforceable in accordance with its terms.

E.     Except as specifically modified by this Agreement, the terms of the Loan Documents are in full force and effect.  This Agreement does not replace or release any of the Loan Documents, except as specifically modified by this Agreement.

F.     If the Property is sold, transferred or conveyed to any person or entity without the consent of the Servicer, then if allowed by State or Federal law, Servicer may terminate this Agreement, and require that the balance of the Note together with any fees and other unpaid amounts be repaid in full (meaning that Servicer can accelerate the Note.)  In this event, Servicer will give you thirty (30) days notice of Acceleration and if the Note has not been paid in full after that time, Servicer may pursue the remedies in the Mortgage, including foreclosure.

G.     Borrower may not assign and no person other than the Borrower may assume Borrower's rights under this Agreement or the Loan Documents.

H.     The Servicer may choose to waive a default under this Agreement or the Loan Documents, but a waiver of any event of default will not be understood to waive similar defaults in the future or other defaults that may occur.

I.     Borrower hereby confirms that this Agreement represents the entire agreement between Borrower and Servicer with respect to the subject matter herein, and that no other prior terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the modification of the Loan Documents that are inconsistent with the terms of this Agreement shall affect the Loan Documents or negate the operation and effect of this Agreement.

J.     Any expenses incurred in connection with the servicing of the Loan, but not yet charged to the Loan account as of the date of this Agreement, may be charged to the Loan and secured by the Mortgage after the Modification Effective Date.

K.     If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the First Modification Payment Date, then these amounts will either become Deferred Amounts under the Loan Documents or will be offset with a portion of Good Faith funds, if applicable.  Any addition of Deferred Amounts or offset of advances pursuant to this section will be reflected on Borrower's periodic statement.

L.     Borrower will execute such other documents or papers as may be reasonably necessary or required by Servicer to effectuate the terms and conditions of this Agreement.

M.     Borrower is advised that forgiveness of debt (if applicable) may have adverse credit and legal consequences and may result in taxable income to Borrower.  Borrower is advised to seek advice from an attorney, certified public accountant or other expert regarding potential consequences of any principal reduction.  Borrower hereby acknowledges that Servicer is giving Borrower no such advice.

N.     To the extent Servicer may deem it necessary, Borrower will cooperate with Servicer to the extent any filing or action is required in Borrower's Bankruptcy Case in order to (a) obtain approval of this agreement, (b) modify Borrower's bankruptcy plan (if Borrower is in a Chapter 13 bankruptcy), or (c) amend the proof of claim filed by Servicer with respect to this debt.  If you are presently subject to a proceeding in Bankruptcy Court, the terms of this Agreement may need to be approved by the Court.

**NOTICES TO CONSUMERS PRESENTLY IN BANKRUPTCY OR WHO HAVE A BANKRUPTCY DISCHARGE:**

**In the event you are subject to an "Automatic Stay" issued by a United States Bankruptcy Court, this communication is not intended to collect, assess, or recover a debt.**

In the event the referenced debt has been discharged in Bankruptcy, this communication is not intended to collect, assess, or recover a debt, does not alter or amend the terms of that discharge, and is not a "reaffirmation" of the debt. Nor does this communication constitute either a demand for payment or a notice of personal liability.

Unless the Bankruptcy Court has ordered otherwise, please also note that despite any Bankruptcy filing, whatever rights we hold in the Property that secures the obligation remain unimpaired. This means that, unless otherwise ordered by the Bankruptcy Court, if the requirements of the Loan Documents are not met and the "Automatic Stay" is no longer in effect, we can pursue whatever *in rem* rights we hold in the Property pursuant to the Mortgage, such as the right to foreclose.

This notice is not intended as legal advice. You should consult your lawyer if you have any legal questions about your rights.

---

### BALLOON PAYMENT DISCLOSURE

This Modification Agreement defers certain amounts, which creates a balloon that will be collected by the Servicer at the earlier of payment in full of the Note or the maturity date. Because these amounts are not included in your regular scheduled payments, even if you make all payments required by this agreement, the loan will not be paid in full at maturity. You therefore may be required to pay the entire outstanding balance in a single payment at the loan maturity date. Neither the Servicer nor Lender has any obligation to refinance or to offer you a new loan at maturity. You may have to seek new third-party financing and incur other additional financing costs at the time the balloon becomes due.

---

Whereof, Servicer and Borrower have executed this Agreement as of the dates indicated below.

STEVEN RIDDICK

Date: 10-19-2015

Account Number:

Caliber Home Loans, Inc., on behalf of the current investor

By: _____

Date: _____

**Exhibit B**

| ...URT EASTERN DISTRICT OF VIRGINIA, NEWPORT NEWS | **PROOF OF CLAIM** |
|---|---|

| ...k | **Case Number: 15-50511-SCS** |
|---|---|

*...claim for an administrative expense that arises after the ...st for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>U.S. Bank Trust, N.A., as Trustee for LSF8 Master Participation Trust | **COURT USE ONLY** |
|---|---|
| Name and address where notices should be sent:<br>Caliber Home Loans, Inc.<br>13801 Wireless Way<br>Oklahoma City, OK 73134 | ☐ Check this box if this claim amends a previously filed claim.<br>Court Claim Number: (if known)<br><br>Filed on: |
| Name and address where payment should be sent (if different from above):<br>Caliber Home Loans, Inc.<br>PO Box 24330<br>Oklahoma City, OK 73124 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.<br>☐ Check this box if you are the debtor or trustee in this case. |

**1. Amount of Claim as of Date Case Filed: $364,413.88**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned

| **3. Last four digits of any number by which creditor identifies debtor: 7017** | **3a. Debtor may have scheduled account as:** | **3b. Uniform Claim Identifier (optional)** |
|---|---|---|

**4. Secured Claim**

Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required documents and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other

Describe: 205 Harbor Drive, Hampton, VA 23661

**Value of Property:** $331,200.00

**Annual Interest Rate: 4%** ☐ Fixed or ☒ Variable (when case was filed)

**Amount of arrearage and other charges as of time case filed included in secured claim, if any: $21,324.73**

**Basis for perfection:** Recorded Deed of Trust

**Amount of Secured Claim:** $364,413.88

**Amount Unsecured:** $

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:**

Check the appropriate box.

☐ I am the creditor.   ☒ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor.   ☐ I am a guarantor, surety, indorser, or other codebtor.

(See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: T. Jackson Stewart, Esq.
Title: Attorney for Creditor
Company: Brock & Scott, PLLC
5121 Parkway Plaza Blvd, Suite 300, Charlotte, NC 29217   (704) 369-0676

Date: 07/27/15   /s/ T. Jackson Stewart, Esq.

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 357*

B 10A (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

| | |
|---|---|
| **Name of debtor** Steven Earl Riddick | **Case number:** 15-50511-SCS |
| **Name of creditor:** U.S. Bank Trust, N.A., as Trustee for LSF8 Master Participation Trust | **Last four digits of any number you use to identify the debtor's account:** 7017 |
| | **Uniform Claim Identifier:** |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**                                                                                      (1)  $ 345,870.54

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 4 % | 08/01/2014 | 04/18/2015 | $ 9,876.51 |
| % | | | $ |
| | | **Total interest due as of the petition date** | $ 9,876.51  Copy total here ▶ (2) + $ 9,876.51 |

3. **Total principal and interest due**                                                         (3)  $ 355,747.05

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. **Late charges** | | (1) | $ 0.00 |
| 2. **Non-sufficient funds (NSF) fees** | 11/17/14 | (2) | $ 25.00 |
| 3. **Attorney's fees** | 1/29/15 | (3) | $ 1,215.00 |
| 4. **Filing fees and court costs** | | (4) | $ 0.00 |
| 5. **Advertisement costs** | 4/6/15 | (5) | $ 986.40 |
| 6. **Sheriff/auctioneer fees** | | (6) | $ 0.00 |
| 7. **Title costs** | 2/9/15 | (7) | $ 400.00 |
| 8. **Recording fees** | 3/24/15, 3/25/15 | (8) | $ 42.00 |
| 9. **Appraisal/broker's price opinion fees** | | (9) | $ 0.00 |
| 10. **Property inspection fees** | 11/6/14, 12/22/14, 1/23/15, 2/27/15, 3/20/15 | (10) | $ 75.00 |
| 11. **Tax advances (non-escrow)** | | (11) | $ 0.00 |
| 12. **Insurance advances (non-escrow)** | | (12) | $ 0.00 |
| 13. **Escrow shortage or deficiency** | | (13) | $ 4,654.06 |
| 14. **Property preservation expenses. Specify:** | | (14) | $ 0.00 |
| 15. Other. **Specify:** Mailing Fees | 3/27/15 | (15) | $ 35.43 |
| 18. **Total prepetition fees, expenses, and charges.** Add all of the amounts listed above. | | (18) | $ 7,432.89 |

B 10A (Attachment A) (12/11)

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

1. **Installment payments due**    Date last payment received by creditor    11/04/2014

    Number of installment payments due    (1) <u>8</u>

2. **Amount of installment payments due**

   (September 1, 2014 to April 1, 2015)    <u>8</u> installments @    <u>$1,736.48</u>

   | | | | |
   |---|---|---|---|
   | **Total installment payments due as of** the petition date $ | $13,891.84 | Copy total here ▶ | (2) $ <u>13,891.84</u> |

3. **Calculation of cure amount**

   | | | |
   |---|---|---|
   | **Add** total prepetition fees, expenses, and charges | Copy total from Part 2 here ▶ | + $ <u>7,432.89</u> |
   | **Subtract** total of unapplied funds (funds received but not credited to account) | | - $ <u>0.00</u> |
   | **Subtract** amounts for which debtor is entitled to a refund | | - $ <u>0.00</u> |
   | **Total** amount necessary to cure default as of the petition date | | (3) $ <u>21,324.73</u> |

Post-petition installment payment amount: $1,643.56
Effective date: 05/01/2015

REPRESENTATION OF PRINTED DOCUMENT

CALIBER
HOME LOANS
Caliber Home Loans, Inc.
P.O. Box 619063
Dallas, TX 75261-9063

**ANNUAL ESCROW ACCOUNT
DISCLOSURE STATEMENT**

Analysis Date: 05/04/2015
Loan Number:
Property Address: 205 HARBOR DRIVE
HAMPTON VA 23661

| | CURRENT PAYMENT | NEW PAYMENT EFFECTIVE 05/01/2015 |
|---|---|---|
| Principal & Interest | $1,152.90 | $1,152.90 |
| Escrow Deposit | $583.58 | $490.66 |
| **Total Monthly Payment** | **$1,736.48** | **$1,643.56** |

Customer Service: 1-800-401-6587
Mon - Fri, 8:00 a.m. to 7:00 p.m. (CST)
www.caliberhomeloans.com

STEVEN E RIDDICK
PO BOX 1205
HAMPTON VA 23661-0205

In accordance with federal guidelines, Caliber Home Loans, Inc. will review your escrow account annually. Certain conditions may require your escrow account to be reviewed more than once in a 12-month period. This statement details your actual escrow account activity since your previous disclosure statement or your initial disclosure and reflects the anticipated activity for the next 12 months.

### ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

| Month | Anticipated Payment | Anticipated Disbursement | Description | Anticipated Balance | Required Balance | |
|---|---|---|---|---|---|---|
| | | | STARTING BALANCE | 3,434.70 | 3,434.70 | |
| May 2015 | 490.66 | .00 | | 3,925.36 | 3,925.36 | |
| Jun 2015 | 490.66 | .00 | | 4,416.02 | 4,416.02 | |
| Jul 2015 | 490.66 | .00 | | 4,906.68 | 4,906.68 | |
| Aug 2015 | 490.66 | .00 | | 5,397.34 | 5,397.34 | |
| Sep 2015 | 490.66 | .00 | | 5,888.00 | 5,888.00 | |
| Oct 2015 | 490.66 | .00 | | 6,378.66 | 6,378.66 | |
| Nov 2015 | 490.66 | -2,388.00 | HOMEOWNER INS | 4,481.32 | 4,481.32 | |
| Nov 2015 | .00 | -3,500.00 | FLOOD INSURANCE | 981.32 * | 981.32 | ** |
| Dec 2015 | 490.66 | .00 | | 1,471.98 | 1,471.98 | |
| Jan 2016 | 490.66 | .00 | | 1,962.64 | 1,962.64 | |
| Feb 2016 | 490.66 | .00 | | 2,453.30 | 2,453.30 | |
| Mar 2016 | 490.66 | .00 | | 2,943.96 | 2,943.96 | |
| Apr 2016 | 490.66 | .00 | | 3,434.62 | 3,434.62 | |
| **TOTAL** | **5,887.92** | **-5,888.00** | | | | |



BASED ON THE ANTICIPATED ESCROW DISBURSEMENTS
AND PAYMENTS, WE HAVE DETERMINED THAT YOUR
ESCROW ACCOUNT HAS ADEQUATE FUNDS.
NEITHER A SHORTAGE NOR A SURPLUS EXISTS.

INTERNET REPRINT

# ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

LOAN NUMBER: ■■■■■■■■                                          DATE ANALYZED: 05/04/2015

**PRIOR 12 MONTH ESCROW HISTORY**

This statement itemizes your actual escrow account transactions since your previous analysis statement or initial disclosure. The projections from your previous escrow analysis are to the left of the actual payments and disbursements. By comparing the actual escrow payment with the previous projections listed, you can determine where a difference may have occurred. An asterisk (*) indicates a difference in either the amount or date.

When applicable, the letter 'E' beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown.

| Month of Activity | Anticipated Deposit | Actual Deposit | Anticipated Payment and Description | Actual Payment and Description | Anticipated Balance | Actual Balance |
|---|---|---|---|---|---|---|
|  |  |  |  | STARTING BAL. | .00 | -7,003.00 |
| May 2014 | .00 |  | 0.00 | 0.00 | 0.00 | -7,003.00 |
| Jun 2014 | .00 |  | 0.00 | 0.00 | 0.00 | -7,003.00 |
| Jul 2014 | .00 | 7,003.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Aug 2014 | .00 |  | 0.00 | 0.00 | 0.00 | 0.00 |
| Sep 2014 | .00 |  | 0.00 | 0.00 | 0.00 | 0.00 |
| Oct 2014 | .00 |  | 0.00 | 0.00 | 0.00 | 0.00 |
| Nov 2014 | .00 |  | 0.00 | -2,388.00 HOMEOWNER INS  * | 0.00 | -2,388.00 |
| Nov 2014 | .00 |  | 0.00 | -3,500.00 FLOOD INSURANCE | 0.00 | -5,888.00 |
| Dec 2014 | .00 |  | 0.00 | 0.00 | 0.00 | -5,888.00 |
| Jan 2015 | .00 |  | 0.00 | 0.00 | 0.00 | -5,888.00 |
| Feb 2015 | .00 |  | 0.00 | 0.00 | 0.00 | -5,888.00 |
| Mar 2015 | .00 |  | 0.00 | 0.00 | 0.00 | -5,888.00 |
| Apr 2015 | .00 |  | 0.00 | 0.00 | 0.00 | -5,888.00 |

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

APRIL 18, 2006                    HAMPTON, VIRGINIA
                                  [City]                    [State]

205 HARBOR DRIVE, HAMPTON, VIRGINIA 23661
                    [Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 356,000.00        (this amount is called `Principal"), plus interest, to the order of Lender.  Lender is RESOURCE BANK, A VIRGINIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of 8.990 %.  The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st   day of each month beginning on JUNE 1, 2006        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on   MAY 1, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at P.O. BOX 61009 DEPT. 777, VIRGINIA BEACH, VIRGINIA 23466                           or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,743.31 .. This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The interest rate I will pay may change on the 1st  day of   MAY, 2009                  , and on that day every   6th   month thereafter.  Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

VIRGINIA ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)—
Single Family-Fannie Mae Uniform Instrument
UFVA3520.01-1400                                    Page 1 of 4                    Form 3520.47  1/01

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding      EIGHT----- percentage points (  8.000   %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than '  11.990  % or less than 8.990     %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   ONE----- percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding   6         months.  My interest rate will never be greater than  14.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15       calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   5.00    % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18 "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

VIRGINIA ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae Uniform Instrument
UNVA3520.03 11/00                                        Page 3 of 4                                        Form 3520.47  1/01

(Page 7 of 10)

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
STEVEN E. RIDDICK           Borrower                                      Borrower

_____ (Seal)          _____ (Seal)
                            Borrower                                      Borrower

_____ (Seal)          _____ (Seal)
                            Borrower                                      Borrower

[Sign Original Only]

This is to certify that this is the Note described in and secured by a Deed of Trust dated *APRIL 18, 2006*,

on the Property located in *HAMPTON*, Virginia

My Commission Expires: *08-31-2006*

_____           *STATE OF VIRGINIA*
Notary Public *KAY SHAHEEN*          *CITY OF HAMPTON*

Pay to the order of _____
without recourse this _20th_ day of _DEC. 1_ 200 _6_
By: _William L. Morrison_
William T. Morrison, Executive Vice President
Resource Bank, A Virginia Corporation

## BALLOON NOTE ADDENDUM
## FIRST MORTGAGE

This Balloon Note Addendum is made this  18th  day of  APRIL, 2006  and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note of the same date (the Note) made by the undersigned (the "Borrower") to evidence indebtedness to  RESOURCE BANK, A VIRGINIA CORPORATION

(the "Lender"), which debt is secured by a Mortgage or Deed or Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at
205 HARBOR DRIVE, HAMPTON, VIRGINIA 23661

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Addendum  The Lender or anyone who takes the Note, Security Instrument and this Addendum by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

Additional Covenants:  Notwithstanding anything to the contrary set forth in the Note, Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.  LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY.  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN FINANCING FROM THE SAME LENDER.

If, on  MAY 1, 2036  I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

All other provisions of the Note are unchanged and remain in full force and effect.

WITNESS THE HAND(S) AND SEALS(S) OF THE UNDERSIGNED:

| Borrower | Date | Borrower | Date |
| STEVEN E. RIDDICK | | | |

| Borrower | Date | Borrower | Date |

| Borrower | Date | Borrower | Date |

Loan Number: ███████████

H744057-0506 ████████

## ADDENDUM TO ADJUSTABLE RATE NOTE

### (Prepayment)

THIS ADDENDUM is made this __18th__ day of __April__ 20 _06_ , and is incorporated into and intended to form a part of the Note and Security Instrument dated the same date as this Addendum.

1.    Section 5 of the Adjustable Rate Note is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full or a partial prepayment at any time without paying any penalty. However, if within the first __Three__ ( _3_ ) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the unpaid principal balance.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2.    All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _April 18, 2006_ _____(SEAL)
                        STEVEN E. RIDDICK                 -Borrower

                        _____(SEAL)
                                                          -Borrower

                        _____(SEAL)
                                                          -Borrower

                        _____(SEAL)
                                                          -Borrower

Addendum Prepayment ARM 1-5
MO (loans over $100,000)
NC (loans over $110,000), PA (loans over $50,000),
RI (1 years only), SC (loans over $100,000),
VA (loans over $75,000)

Return To:
Resource Mortgage
6315 N. CENTER DRIVE, SUITE 230
NORFOLK, VA 23502
Prepared By:
Anna Dunn
6315 N. CENTER DRIVE, SUITE 230
NORFOLK, VA 23502

Tax Map Reference #:

RPC/Parcel ID #:

———————————[Space Above This Line For Recording Data]———————————

# DEED OF TRUST
MIN

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by STEVEN E. RIDDICK, UNMARRIED

Borrower (trustor), to Charles D Robison, III and William T Morrison, 4429   , as
Bonney Road, Virginia Beach VA 23462

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.   , as

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

-6A(VA) (0102)
Page 1 of 15                    Initials:
VMP MORTGAGE FORMS - (800)521-7291

**(A) "Security Instrument"** means this document, which is dated  April 18, 2006
together with all Riders to this document.

**(B) "Borrower"** is  STEVEN E. RIDDICK

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is  Resource Bank

Lender is a  A Virginia Corporation
organized and existing under the laws of  The State of Virginia
Lender's address is  P.O. Box 61009 Dept. 777, Virginia Beach VA 23466

**(D) "Trustee"** is  Charles D Robison, III and William T Morrison

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation whose principal office is located in Virginia. Trustee's address is
4429 Bonney Road, Virginia Beach VA 23462
"Trustee" is Charles D Robison, III and William T Morrison

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation whose principal office is located in Virginia. Trustee's address is
4429 Bonney Road, Virginia Beach VA 23462

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated      April 18, 2006
The Note states that Borrower owes Lender Three Hundred Fifty Six Thousand and
00/100
Dollars
(U.S. $ 356,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 1, 2036              . The interest rate
stated in the Note is  Eight and Ninety Nine Hundredths
percent (                8.990 %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in
accordance with the attached Adjustable Rate Rider.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

-6A(VA) (0102)                          Page 2 of 15            Initials:            Form 3047  1/01

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

LEGAL DESCRIPTION &
BALLOON RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

VMP-6A(VA) (0102)                    Page 3 of 15                    Initials: ___            Form 3047  1/01

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          City          [Type of Recording Jurisdiction] of          Hampton          [Name of Recording Jurisdiction]:

SEE EXHIBIT "A" LEGAL DESCRIPTION AND BALLOON RIDER ATTACHED HERETO AND MADE A PART HEREOF:

which currently has the address of   205 HARBOR DRIVE

HAMPTON                                 [Street]
                               [City/County], Virginia     23661    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6A(VA) (0102)                      Page 4 of 15              Initials:                    Form 3047   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

-6A(VA) (0102)　　　　　Page 5 of 15　　　　　Initials:　　　Form 3047  1/01

amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

 

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or

-6A(VA) (0102)                          Page 7 of 15                Initials:              Form 3047  1/01

condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

-6A(VA) (0102)                    Page 10 of 15          Initials: ____          Form 3047   1/01

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of



Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

    **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

    Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

-6A(VA) (0102)               Page 12 of 15       Initials:      Form 3047  1/01

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

  

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____(Seal)
STEVEN E. RIDDICK                                       -Borrower

_____                _____(Seal)
                                                        -Borrower

_____(Seal)          _____(Seal)
              -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
              -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
              -Borrower                                 -Borrower

 -6A(VA) (0102)                    Page 14 of 15                    Form 3047   1/01

STATE OF VIRGINIA, CITY OF HAMPTON     County, ss:

The foregoing instrument was acknowledged before me this   18th day of April 2006     by
STEVEN E. RIDDICK

My Commission Expires: 08-31-2006          Notary Public          KAY SHAHEEN



HAMPTON

-6A(VA) (0102)                    Page 16 of 16          Initials:           Form 3047  1/01

## EXHIBIT A
### Legal Description

**PARCEL I:**

All that certain lot, piece or parcel of land situate, lying and being in the City of Hampton, Virginia, known and designated as Lot Numbered TEN (10), in Block "B", as shown in that certain plat entitled, "INDIAN RIVER PARK PROPERTY OF BOULEVARD DEVELOPMENT CORPORATION," made by P. P. Phillips, C.E., dated June 19, 1916 and duly recorded in the Clerk's Office of the Circuit Court for the City of Hampton, Virginia, in Deed Book 59, page 478 et. seq. to which reference is here made.

**PARCEL II:**

All that certain lot, piece or parcel of land situate, lying and being in the City of Hampton, Virginia, known and designated as Lot Numbered B 10A, as shown on that certain plat entitled, "MAP OF INDIAN RIVER AND HARBOR DRIVE, TRACED FROM MAP BY R. F. PYLE FOR PROPOSED DREDGING OF INDIAN RIVER," dated May 8, 1951, and duly recorded in the Clerk's Office of the Circuit Court of the City of Hampton, Virginia, in Miscellaneous Plat Book 1, page 65, to which reference is here made.



LOAN NO

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this   18th day of   APRIL, 2006              ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to RESOURCE BANK, A VIRGINIA
CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located
at:
205 HARBOR DRIVE, HAMPTON, VIRGINIA 23661

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of   8.990  %.  The Note provides for changes in
the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the  1st  day of  MAY, 2009              ,
and on that day every   6th    month thereafter.  Each date on which my interest rate could change
is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information.  The Note Holder will give me notice of this choice.

### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
EIGHT-----                              percentage points (  8.000   %) to the Current Index.
The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.990% or less than 8.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE————— percentage points (1.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.990 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
STEVEN E. RIDDICK          Borrower                                        Borrower

_____ (Seal)        _____ (Seal)
                          Borrower                                        Borrower

_____ (Seal)        _____ (Seal)
                          Borrower                                        Borrower

# BALLOON RIDER TO MORTGAGE / DEED OF TRUST

This Balloon Rider to Mortgage / Deed of Trust is made this APRIL 18, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage / Deed of Trust made by the undersigned ("THE BORROWER") in favor of RESOURCE BANK, A VIRGINIA CORPORATION ("THE LENDER") and dates as of even date herewith.

Additional Covenants. In addition to the covenants and agreements made in the Mortgage / Deed of Trust, The Borrower and The Lender further covenant and agree as follows:

Balloon Payment

This loan must be paid in full at maturity. I must repay the entire principal balance of the loan and unpaid interest then due. The Lender is under no obligation to refinance the loan. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be the lender I have this loan with, willing to lend me the money. If I refinance this loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain financing from the same lender.

By Signing Below, Borrower accepts and agrees to the terms and covenants contained in the Balloon rider to Mortgage / Deed of Trust.

In Witness Whereof, The Borrower has executed this Balloon Rider on APRIL 18, 2006 .

_____         _____
STEVEN E. RIDDICK

_____         _____


_____         _____

INSTRUMENT #060010218
RECORDED IN THE CLERK'S OFFICE OF
HAMPTON ON
APRIL 21, 2006 AT 01:18PM
LINDA B. SMITH, CLERK

RECORDED BY: YXM

LINDA B. TCHILDER SHIT
2006 APR 21 PM 1:18
DODK# PAGE
CITY OF HAMPTON, VA.

ALLIANCE TITLE & SETTLEMENT
1944-A EAST PEMBROKE AVE
HAMPTON, VA 23663
(P) 757-265-0551

When Recorded Return to:
T.D. Service Company
4000 W. Metropolitan Dr., Suite 400
Orange, CA 92868

Space Above This Line For Recorder's Use

| Prepared By: | **Brandi Coulter** | Loan Number: | |
|---|---|---|---|
| MERS Min: | | Parcel ID: | |
| Caliber Document ID# | | | |

### ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned HSBC MORTGAGE SERVICES, INC., whose address is 636 GRAND REGENCY BLVD BRANDON, FL 33510, hereby grants, assigns and transfers to LSF8 MASTER PARTICIPATION TRUST whose address is 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134 all beneficial interest under that certain Deed of Trust dated 4/18/2006 executed by STEVEN E RIDDICK, UNMARRIED to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) ACTING SOLELY AS A NOMINEE FOR RESOURCE BANK, ITS SUCCESSORS AND ASSIGNS in the amount of $356,000.00 and recorded on 4/21/2006 as Instrument # 060010218, in Book/Volume or Liber No. -- , Page/Folio 357 of Official Records in the County Recorder's office of HAMPTON County, VA. describing land herein as: 'SEE ATTACHED 'EXHIBIT A'

*City

Property Address:    **205 HARBOR DRIVE, HAMPTON VA  23661**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated this 28th day of March of 2014

Witness #1          Kerry Brashears

Witness #2          Nancy Ortiz

County of  Oklahoma )
State of  Oklahoma )

HSBC MORTGAGE SERVICES, INC., BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT

By:     **Mindi Hernandez**
Title:     **Authorized Signatory**

On March 28, 2014 before me, B. Coulter, a Notary Public in and for Oklahoma County, in the State of Oklahoma, personally appeared, Mindi Hernandez, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand official seal,

Notary Name:    B. Coulter

My Commission Expires:     5/14/2016

```
┌─────────────────────────────────────┐
│  (SEAL)       B. COULTER              │
│              Notary Public            │
│             State of Oklahoma         │
│  Commission # 12004612  Expires 05/14/16 │
└─────────────────────────────────────┘
```

PG 0009 MAY 16

EXHIBIT A
Legal Description

**PARCEL I:**

All that certain lot, piece or parcel of land situate, lying and being in the City of Hampton, Virginia, known and designated as Lot Numbered TEN (10), in Block "B", as shown in that certain plat entitled, "INDIAN RIVER PARK PROPERTY OF BOULEVARD DEVELOPMENT CORPORATION," made by P. P. Phillips, C.E., dated June 19, 1916 and duly recorded in the Clerk's Office of the Circuit Court for the City of Hampton, Virginia, in Deed Book 59, page 478 et. seq. to which reference is here made.

**PARCEL II:**

All that certain lot, piece or parcel of land situate, lying and being in the City of Hampton, Virginia, known and designated as Lot Numbered B 10A, as shown on that certain plat entitled, "MAP OF INDIAN RIVER AND HARBOR DRIVE, TRACED FROM MAP BY R. F. PYLE FOR PROPOSED DREDGING OF INDIAN RIVER," dated May 8, 1951, and duly recorded in the Clerk's Office of the Circuit Court of the City of Hampton, Virginia, in Miscellaneous Plat Book 1, page 65, to which reference is here made.

INSTRUMENT [redacted]
RECORDED IN THE CLERK'S OFFICE OF
HAMPTON ON
MAY 16, 2014 AT 09:26AM

LINDA B. SMITH, CLERK
RECORDED BY: MJB

**I20002212**

Assessor's/Tax ID No. 1005478
Recording Requested By:
HSBC MORTGAGE SERVICES

When Recorded Return To:

ASSIGNMENTS
HSBC MORTGAGE SERVICES
636 GRAND REGENCY BLVD
BRANDON, FL  33510

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Hampton City, Virginia
SELLER'S SERVICING #  ████████  *RIDDICK*

MERS #: ████████   SIS #: 1-888-679-6377

Date of Assignment: February 6th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR RESOURCE BANK
*ITS SUCCESSORS AND ASSIGNS* at 1595 SPRING HILL ROAD, STE 310, VIENNA, VA 22182
Assignee: HSBC MORTGAGE  SERVICES INC at 636 GRAND REGENCY BLVD, BRANDON, FL  33510

Executed By: STEVEN E. RIDDICK, UNMARRIED  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC
AS NOMINEE FOR RESOURCE BANK *ITS SUCCESSORS AND ASSIGNS*
· Trustee: CHARLES D ROBINSON, III AND WILLIAM T MORRISON Date of Deed of Trust: 04/18/2006 Recorded:
04/21/2006  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 060010218  In Hampton City, State of
Virginia.

Assessor's/Tax ID No. 1005478

Property Address: 205 HARBOR DRIVE, HAMPTON, VA  23661

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $356,000.00 with interest, secured thereby, with all moneys now owing or
that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to
the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written: ·
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR RESOURCE BANK *ITS
SUCCESSORS AND ASSIGNS*
On February 6th, 2012

By: *Paula Johnson*
PAULA JOHNSON, Assistant Secretary


STATE OF Florida
COUNTY OF Hillsborough

On February 6th, 2012, before me, TREVIN MYERS, a Notary Public in and for Hillsborough in the State of Florida,
personally appeared PAULA JOHNSON, Assistant Secretary being duly sworn of MERS AS NOMINEE FOR
RESOURCE BANK ISAA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,


TREVIN MYERS
Notary Expires: 05/30/2015  #EE098231

**TREVIN MYERS**
**NOTARY**
My Comm. Expires
May 30, 2015
No. EE098231
**PUBLIC**
**STATE OF FLORIDA**

(This area for notarial seal)


Prepared By:
Erika Knighton, HSBC MORTGAGE SERVICES 636 GRAND REGENCY BLVD, BRANDON, FL  33510 813-571-8400


In the Clerk's Office of the Circuit Court of the City of Hampton,
Virginia ⟨2/16⟩ A.D. 201⟨2⟩ at ⟨9:49⟩ ⟨A⟩M. The foregoing
instrument was this day presented in office and upon certificate
thereto annexed, admitted to record as the law directs.

Teste: Linda Batchelor Smith, Clerk
By ⟨signature⟩
Dep. Clerk

INSTRUMENT #120002212
RECORDED IN THE CLERK'S OFFICE OF
HAMPTON ON
FEBRUARY 16, 2012 AT 09:49AM

LINDA B. SMITH, CLERK
RECORDED BY: MJB

LINDA A BATCHELOR SMITH
CLERK OF CIRCUIT COURT

2012 FEB 16  AM 9:49

BOOK# _____ PAGE# _____
CITY OF HAMPTON, VA